Patsy M. WOOD, Plaintiff,

v.

John J. CALLAHAN, Commissioner of Social Security, Defendant.

No. 1:96CV5–MMP.

United States District Court,
N.D. Florida,
Gainesville Division.

Sept. 3, 1997.

N. Albert Bacharach, Gainesville, FL, for Plaintiff.

Roy F. Blondeau, U.S. Dept. of Justice, Tallahassee, FL, for Defendant.

### ORDER AND FINAL JUDGMENT

PAUL, Senior District Judge.

This social security case is before the Court upon the Magistrate Judge's report and recommendation dated June 10, 1997 (doc. 19). All parties have been furnished with copies of the report and recommendation and have been afforded an opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1). Having considered the report and all objections timely filed by the parties, the Court has ·determined that the recommendation should be ADOPTED.

### DISCUSSION:

At the time of her application for disability benefits, the Plaintiff was a fifty-four-year-old woman alleging disability due to a host of complications. These complications included asthma, emphysema, fibromyalgia, chronic obstructive pulmonary disease, and arthritis. The Plaintiff testified that the date of the onset of these complications was June 15, 1990 and that the pain they caused prevented her from performing full-time work. Additionally, several of the Plaintiff's treating physicians previously noted that her condition limited her working ability.

On March 30, 1993, the Plaintiff filed an application for disability insurance and supplemental security benefits. The administrative law judge (ALJ) entered a partially favorable and partially unfavorable decision on February 24, 1995. In the decision, the ALJ

found that the Plaintiff was disabled as of October 23, 1993, the date she turned 55 years of age. The Plaintiff appealed but the Appeals Council denied review, thereby making the ALJ's decision the final agency decision. The Plaintiff then filed the instant action, which was referred to the Magistrate.

The Magistrate Judge, in his report, determined that the ALJ's decision is supported by substantial evidence in the record and is premised upon correct legal principles (doc. 19 at 13). The Plaintiff objected to the report (doc. 20) and to the Magistrate's recommendation that the Plaintiff's action should be dismissed. As support for her objection, the Plaintiff referred the Court to the arguments made in her memorandum of law filed on July 31, 1996 (doc. 17).

According to 20 C.F.R. § 404.603(b), the Plaintiff may not receive benefits for a period greater than twelve months prior to the filing of her application. Although the Plaintiff requests benefits from her alleged onset date of June 15, 1990, the earliest date from which she could have started receiving benefits was March 5, 1992. Therefore, the Plaintiff's present action essentially involves the determination of whether she is entitled to benefits from March 5, 1992 through October 22, 1993.

■ The Plaintiff contends that the ALJ inappropriately disregarded or undervalued the opinion of her treating physicians. Absent good cause, the opinions of the Plaintiff's treating physicians must be accorded considerable or substantial weight. *Broughton v. Heckler,* 776 F.2d 960, 960–61 (11th Cir.1985). In accordance with *Broughton,* the ALJ specifically discussed the findings of the Plaintiff's physicians finding that the opinions of disability were not supported by clinical or laboratory findings and, additionally, that the opinions were inconsistent with other evidence in the record. Furthermore, the ALJ noted that the Plaintiff's complications were not accompanied by explanations as to how these complications are equivalent to those listed under 20 C.F.R. § 404.1520(d) as required by *Bell v. Bowen,* 796 F.2d 1350, 1353 (11th Cir.1986). Therefore, the ALJ

was correct in giving the treating physician's opinions minimal weight.

■ The Plaintiff also argues that, because of her pain, she could not work full-time during the relevant period. The ALJ, though, stated sufficient reasons to disregard the Plaintiff's testimony regarding pain and her inability to work. The reasons cited by the ALJ included the statement that no finding was made by any physician of any limitation on walking, standing, or sitting. The ALJ also noted that the Plaintiff was involved with daily activities inconsistent with her testimony. Therefore, the ALJ made the proper credibility determination based on substantial evidence in the record.

■ Although this determination is dispositive of the issue of whether the Plaintiff is unable to work, the Plaintiff incorrectly cites *Johnson v. Harris,* 612 F.2d 993 (5th Cir. 1980)[1] for the proposition that her inability to work full-time makes her incapable of performing "substantial gainful activity." The *Johnson* court stated that "[i]t has been held that a physical limitation which prevents a claimant from working a full workday, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the [Social Security] Act." *Id.* at 998 (citations omitted). This dicta suggests that anything short of full-time capability to work, including part time work, cannot constitute "substantial gainful activity" and therefore qualifies the applicant for disability benefits. *See Burkhalter v. Schweiker,* 711 F.2d 841, 844–45 (8th Cir.1983); *Lebron v. Secretary of HHS,* 593 F.Supp. 34, 37–38 (D.P.R.1984).

Although no Eleventh Circuit case has expressly determined the issue, most other Circuits, such as the Eighth Circuit, and several District Courts in the Eleventh Circuit have recognized that part-time work may constitute "substantial gainful activity." *See, e.g., Comstock v. Chater,* 91 F.3d 1143, 1145 (8th Cir.1996); *Leachman v. Sullivan,* No. 91–1015–T–M, 1993 WL 291781 (S.D.Ala. Apr.23, 1993); *Cross v. Califano* 475 F.Supp. 896 (M.D.Fla.1979). Additionally, 20 C.F.R.

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981), the Eleventh Circuit

adopted as precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

§ 404.1572(a) states that "work may be substantial even if it is done on a part-time basis." Therefore, because the relevant language in *Johnson* consists of only dicta, the weight of authority from other Circuits and the Code of Federal Regulations allow part-time work to be considered as "substantial gainful activity."

■ Consequently, the record has substantial evidence supporting the conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the Court sees no reason to depart from the Magistrate's recommendation that the Defendant Secretary's decision be AFFIRMED.

For the reasons set forth above, it is hereby

### ORDERED AND ADJUDGED:

1. The Magistrate's report and recommendation are adopted and incorporated by reference in this order of the Court.

2. The Secretary's decision partially granting and partially denying benefits is hereby AFFIRMED.

### REPORT AND RECOMMENDATION

DAVIS, United States Magistrate Judge.

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Wood's application for a period of disability and disability insurance benefits under Title II of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

### A. PROCEDURAL HISTORY

The claimant filed applications for disability insurance benefits and Supplemental Security Benefits on March 30, 1993. The ALJ entered a partially favorable and partially unfavorable decision on February 24, 1995, finding that the claimant was disabled as of October 23, 1993, the date she turned 55 years of age, but not before. The Appeals Council denied review on November 6, 1995, thereby making the decision of the ALJ the final decision of the Commissioner. This action followed.

### B. THE FINDINGS OF THE ALJ

The ALJ found that the claimant met the disability insured status requirements of the Act; that she had not engaged in substantial gainful activities since June 15, 1990; that she had severe impairments but that her allegations regarding the severity of her subjective physical complaints were not credible; that she had the residual functional capacity to perform the physical exertion requirements of work except for lifting more than 20 lbs. at a time and frequent lifting or carrying of objects weighing up to 10 lbs.; that she had the residual functional capacity to perform the full range of light work; that she had a sixth grade education; that she did not have work skills which were transferrable to the skilled or semi-skilled work activities of other work; and that she was not disabled prior to October 23, 1993. On October 23, 1993 she became disabled as a result of her having reached the age of 55 years and therefore having qualified as closely approaching advanced age.

### C. THE ISSUE PRESENTED

The claimant argues that the ALJ erred in rejecting the opinion of the treating physician without giving explicit and adequate reasons, and that the ALJ further erred in disregarding the claimant's subjective complaints of pain, and that claimant was disabled from her onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.

The issue thus presented is whether the ALJ's decision that the claimant, in light of

her age, education, work experience, and residual functional capacity, was not disabled prior to October 23, 1993 is supported by substantial evidence in the record.

## D. THE STANDARD OF REVIEW

█ ·The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles.[1] "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983) (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "... but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(f), the Commissioner analyzes a claim in five steps. A finding of disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. If the claimant establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen,* supra, 792 F.2d at 131; *MacGregor v. Bowen,* 786 F.2d 1050, 1052 (11th Cir.1986). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir. 1987).

The Commissioner's rules define "sedentary work" in part:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

The Commissioner's rules define "light work" in part:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10

---

**1.** *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir.1986):

It is well settled that courts review disability cases to determine whether the [Commissioner's] decision is supported by substantial evidence. *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982). In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the

[Commissioner's] decision. *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir.1983). We must also examine legal principles upon which the [Commissioner's] decision is based. "A determination that is supported by substantial evidence may be meaningless ... if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983).

pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The ability do sedentary work, or any sort of work, for that matter, requires an assessment of whether the claimant can work a full work day, less a reasonable time for lunch and breaks. *Smith v. Schweiker*, 646 F.2d 1075, 1081 (5th Cir., Unit A, 1981).

Pain is treated by the regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "... unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. In *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.1985), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the *Hand* test. *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir.1991); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991); *Martin v. Railroad Retirement Bd.*, 935 F.2d 230, 233 (11th Cir.1991).

But "[w]hile both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."

*Elam*, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992), citing *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir.1987).

At steps 4 and 5 of the evaluation process it is appropriate for the Administrative Law Judge to consider a claimant's daily activities. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir.1987). If daily activities are to be considered, however, the Administrative Law Judge must do so in the context of all of the evidence in the record:

> We have consistently held that in ascertaining whether the [Commissioner's] findings are supported by substantial evidence, we do not consider only those parts of the record that support those findings, but rather must "view the entire record and take account of evidence in the record which detracts from the evidence relied on by the [Commissioner]."

*Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir.1986).

The *Parker* court found the Administrative Law Judge's reliance upon Claimant's "daily activities" to discount her testimony as to pain to have been flawed for failure to consider the claimant's testimony that she had to lie down after two hours of such work. *Id.* Similarly, in *Foote v. Chater*, 67 F.3d 1553 (11th Cir.1995), the court held that a conclusory citation to a claimant's "daily activities" as a basis for failing to believe her testimony as to pain was insufficient where there was a medical condition that reasonably could have given rise to the pain described, and, although she testified that she cooked and shopped for herself, she had trouble putting on her clothing. 67 F.3d at 1561.

■ Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Claimant concerning pain] he must do so explicitly and give reasons for that decision.... Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." *MacGregor v. Bowen*, 786 F.2d at 1054; *Holt v. Sullivan*, 921 F.2d at 1223. The reasons articulated for disregarding the claimant's subjective pain testi-

mony must be based upon substantial evidence. *Jones v. Department of Health and Human Services,* 941 F.2d 1529, 1532 (11th Cir.1991).

▬▬ Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Broughton v. Heckler,* 776 F.2d 960, 960–61 (11th Cir.1985); *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir.1986). Generally, a treating physician's medical opinion is entitled to greater weight than the opinion of a consulting physician. *Wilson v. Heckler,* 734 F.2d 513, 516 (11th Cir.1984). In *MacGregor v. Bowen,* 786 F.2d 1050 (11th Cir.1986), the Eleventh Circuit ruled:

> The Commissioner must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.... Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true.

786 F.2d at 1053. The opinion of a nonexamining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician. *Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir.1985). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Warncke v. Harris,* 619 F.2d 412, 417 (5th Cir.1980); *Johns v. Bowen,* 821 F.2d 551, 555 (11th Cir.1987). *Compare, Wilson v. Heckler, supra.*

**E. DISCUSSION**

Claimant filed her claim for Social Security benefits nearly three years after her claimed onset date. Thus, even if claimant were able to prove she was disabled as of June 15, 1990, she is still prohibited from receiving benefits for the period greater than twelve months prior to her application. 42 C.F.R. § 404.603(b). Accordingly, the earliest date upon which she could have begun receiving benefits was March 5, 1992. The ALJ determined that claimant was disabled commencing on October 23, 1993. Therefore, the claimant in this action is seeking the determination that she was entitled to benefits from March 5, 1992 through October 22, 1993, or an additional period of just under 20 months.

**1. The Treating Physicians' Opinions**

The ALJ's decision sets out the claimant's medical history in detail. The claimant underwent a hysterectomy in early 1988 and thereafter had very little medical care until the time of her claimed June 15, 1990 onset date. Over the next two years or until about July 1991, she was treated by her family physicians for such conditions as sore throat, epigastric distress and low back pain. In July of 1991 the physicians at her regular clinic diagnosed her with bronchitis and later asthma-bronchitis. Over the next year, or until roughly May 1992, her physicians indicated that she had asthma. However, there is absolutely nothing in the record to indicate the severity of the asthma, or of any other condition she had. Moreover, there is nothing to indicate that she suffered from any impairment as a result of her various complaints.

On May 18, 1992 she visited the clinic again. The admitting assessment included the statement "patient wants a note that says zero work due to totally disabled" (Tr. 217). The next week, one of the treating physicians at the clinic, Dr. Rigsby, noted in the record, "severe arthritis—unable to work". He also noted "asthma at times. Lungs clear now" (Tr. 216). On the same day, Dr. Rigsby wrote on a prescription pad "totally disabled to work" (Tr. 250). However, two weeks later on June 9, 1992, Dr. Rigsby noted "feeling well. No pain. Examine—normal. Lungs—clear" (Tr. 216). Thereafter, the claimant's care was taken over by another physician at the family clinic, Dr. Maliszewski.

On July 10, 1992, Dr. Maliszewski noted "minimal COPD [chronic obstructive pulmonary disease], obesity, osteoarthritis" (Tr. 213). Claimant was referred to the Division of Rheumatology and Clinical Immunology at the University of Florida College of Medicine which rendered a report on August 4, 1992 (Tr. 172) indicating claimant was suffering from fibromyalgia but did not have any evi-

dence of inflammatory joint disease. There was no indication in that report that the claimant suffered from any limitations or displayed any symptoms which would provide a basis for finding an impairment at that point.

In late 1992, claimant was examined by Dr. Janousek who reported by letter dated November 2, 1992 (Tr. 174). Dr. Janousek, who appears to have done a complete physical examination, found that although claimant's gait was slow and stiff and although she had a limp favoring her left foot, her tandem gait was normal, she could walk on her heels (but not her toes) normally, that she could squat normally, but slowly, that there was tenderness on the left side of her mid-back, that her heart and lungs were normal, that she had normal pulses, no edema, normal straight-leg raising for back pain and normal reflexes. Finally, he noted there was tenderness of the ankles and knees, but no effusion or deformities of the joints. His final assessment was "asthma, emphysema, history of fibromyalgia, chronic pain and atypical chest pain. Ms. Woods' ability to do work-related activity is limited by these problems" (Tr. 175). In the summer of 1993, Dr. Janousek wrote another letter which had essentially the same findings (Tr. 186). Finally, on September 12, 1993, Dr. Maliszewski wrote on a prescription pad that "this is to certify that Ms. Patsy Woods suffers from asthma, COPD, hypertension and disabling arthritis. *She is unable to work*" (Tr. 210). It should be noted that this note was dated roughly six weeks before the ALJ determined that she was disabled effective October 23, 1993.

In summary, during the period from March 5, 1992 until October 23, 1993 (the period for which claimant would be eligible for benefits were she disabled) claimant's physicians did not agree on her condition or the limitation it put on her ability to work. Dr. Rigsby indicated that she was totally disabled to work but two months later Dr. Maliszewski found she had minimal COPD, Dr. Janousek indicated that her ability to work was limited and finally in September 1993, Dr. Maliszewski indicated that she was unable to work. It is claimant's position that the opinions of the treating physicians were ignored by the ALJ or, if not ignored, his reasons for disregarding them were not explained as required by *Broughton v. Heckler and Jones v. Bowen, supra.* To the contrary, the ALJ specifically discussed these findings but noted that the opinions of disability were not supported by clinical or laboratory findings and were inconsistent with the evidence described in their own reports as well as the record as a whole. Also, the opinions were not followed by explanations as to what limitations were caused by impairments (Tr. 15).

The real issue here, then, is whether a treating physician's statement that the claimant is "totally disabled," without further explanation or without laboratory or other physical findings to support that conclusion, must of necessity be given considerable weight by the ALJ. In an analogous case involving a scheduled impairment, the Eleventh Circuit considered the situation of a claimant with a severe cardiac problem and impairment. *Bell v. Bowen,* 796 F.2d 1350 (11th Cir.1986). The claimant's physician stated that "[claimant's] condition will not improve and he will continue to suffer from disability." *Id.* at 1351. The ALJ in *Bell* had found that although the treating physician had noted severe disability, there was insufficient medical evidence to support the treating physician's conclusion that the claimant was unable to engage in substantial gainful activity. Particularly relevant is the following:

We hold when a claimant contends that he has an impairment meaning the listed impairments entitling him to an adjudication of disability under Regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency.

*Bell* at 1353.

In the case now under consideration, the ALJ was not dealing with a listed impairment but with a combination of conditions. Even so, the logic is inescapably the same.

Where the treating physicians failed to "present medical evidence which describes how the impairment has such an equivalency" the ALJ is correct in giving the treating physicians' opinions minimal weight particularly where, as here, he articulates sufficient reasons for finding otherwise.

### 2. Claimant's Testimony of Disabling Pain

Although the claimant testified to pain and to the inability to work, the ALJ stated sufficient reasons to disregard this testimony, including no finding by any physician of any limitation on walking, standing, or sitting; normal range of motion and normal grip strength; no effusion, edema, swelling or joint deformity; and some daily activities inconsistent with her testimony. The ALJ thus made a proper credibility determination based on substantial evidence in the record.

### 3. Claimant's Ability to Work Only Part–Time

Claimant argues that because of her pain she could not work full-time during the relevant period, and that if she could work at all, at best she could work only part-time. That being the case, she is entitled to a finding of disability because part-time employment does not qualify as substantial gainful activity. Claimant's argument fails for two reasons: (1) the ALJ properly discounted her complaints of pain, therefore also discounting her claim that she could work only part-time, and (2) claimant's legal position that full-time employability is a necessary component of substantial gainful activity is misplaced.[2]

Claimant cites *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir.1980) and *Tucker v. Schweiker*, 650 F.2d 62 (5th Cir. Unit A 1981)[3] for the proposition that an individual who is unable to work a full day minus a reasonable time for lunch and breaks is not able to engage in substantial gainful activity.[4] A close reading of *Johnson*, and its progeny, discloses that this proposition is not in fact the established law of this Circuit.

First, the rule announced in *Johnson* ("It has been held that a physical limitation which prevents a claimant from working a full work-day, minus a reasonable time for lunch and breaks, constitutes a disability within the meaning of the Act (citations omitted)", *Id.* at 998, was dicta only, as was plainly stated by the court ("Of course, this Court is limited to an examination of the evidence before the ALJ and is not allowed to consider this new evidence [that claimant could work only part-time] in deciding if the administrative decision was correct"), *Id.* at 998–99. Second, the *Johnson* decision has been criticized for not giving consideration to the regulations adopted by the Secretary defining what constitutes substantial gainful activity. *Burkhalter v. Schweiker*, 711 F.2d 841, 844 (8th Cir.1983). In accordance with its congressional mandate, the Social Security Administration adopted a regulation providing that "work may be substantial even if it is done on a part-time basis." 20 C.F.R. § 404.1572 (1980).[5] A cursory review of the relevant case law suggests that all circuits which have addressed this issue have recognized that part-time work may indeed constitute substantial gainful activity, thereby satisfying the Commissioner's burden of demonstrating that other available work exists in the national economy. *See, e.g., Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir.1996); *Cline v. Chater*, 82 F.3d 409 (4th Cir.1996) (Table, Text in Westlaw, No. 95–2076) (finding vocational expert testimony recognizing the availability of part-time work significant because such employment may constitute substantial gainful activity); *Conn v. Secretary of Health and*

---

**2.** Because the ALJ's decision on the facts is supported in the record, it is unnecessary to address claimant's legal argument. Nevertheless, this argument comes up frequently in this court and counsel should be aware of the analysis which follows.

**3.** *Tucker v. Schweiker* held merely the obvious— that two or three hours of sedentary activity *per month* is not substantial gainful activity.

**4.** *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) adopted as binding precedent all of the

old 5th Circuit decisions handed down prior to October 1, 1981.

**5.** Although *Johnson* was decided five months prior to the adoption of 20 C.F.R. § 404.1572, essentially the same text of this regulation predated *Johnson* within 20 C.F.R. § 404.1532(b) (repealed) (stating that "work activity performed on a part-time basis may also be substantial"). *See, e.g., Chicager v. Califano*, 574 F.2d 161, 163 (3d Cir.1978).

**1456**

*Human Services,* 51 F.3d 607, 609 (6th Cir. 1995); *Davis v. Secretary of Health and Human Services,* 915 F.2d 186, 189 (6th Cir. 1990); *Wright v. Sullivan,* 900 F.2d 675, 678–79 (3rd Cir.1990). *See also Lebron v. Secretary of Health and Human Services,* 593 F.Supp. 34 (D.P.R.1984); *Cross v. Califano,* 475 F.Supp. 896, 897 (M.D.Fla.1979).

Regardless, claimant argues that the subject regulation is itself invalid because it contravenes the Social Security Act by defining "substantial gainful activity" too narrowly.[6] Title 42 U.S.C. § 423(d)[7] does not define "substantial gainful activity". As noted above, the Commissioner was given a mandate by the Congress to promulgate rules consistent with the Act. Claimant's argument that full-time employability must be read into the statute has no support. No court has held that by adopting the cited regulation the Commissioner has exceeded his authority. Moreover, there is no logic in saying that "substantial" must necessarily equal "full-time". It is elementary that if the Congress had meant the latter it would have said so.

**6.** 20 C.F.R. § 404.1572 defines substantial gainful activity as: Substantial gainful activity is work activity that is both substantial and gainful: (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized. (c) Some other activities. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

**7.** 42 U.S.C. § 423(d) provides: (1) The term "disability" means— (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; or (B) in the case of an individual who has attained the age of 55 and is blind (within the meaning of "blindness" as defined in section 416(I)(1) of this title), inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously en-

A more reasonable reading of the statute is that "substantial" means less than full-time; how much less being left to the discretion of the Commissioner and, where appropriate, to the reviewing court.

**CONCLUSION**

For the above reasons, it is the opinion of the undersigned that the ALJ's decision that claimant is not entitled to benefits prior to October 23, 1993 was supported by substantial evidence in the record and that the ALJ applied the appropriate legal standards in reaching his decision.

Accordingly, it is respectfully RECOMMENDED that the decision of the ALJ be affirmed and that this action be DISMISSED.

At Pensacola, Florida on the 10th day of June, 1997.

gaged with some regularity and over a substantial period of time. (2) For purposes of paragraph (1)(A)— (A) An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. (B) In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.